SCARSDALE NATIONAL BANK AND TRUST COMPANY, Plaintiff, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.

Supreme Court, Westchester County, January 18, 1933.

*Crane & Hoffnagle*, for the plaintiff.

*Westall, Stohldreier & Barrett*, for the defendant.

WITSCHIEF, J.    Each of the parties to this action claims a fund of $13,839.15, a balance in the hands of the State Comptroller applicable to contract No. 330 of the Westchester County Park Commission and No. 726 in the State Comptroller's office, hereafter referred to as contract No. 726.

George T. Cook & Sons is a partnership consisting of James Cook, Arthur Cook and Remsen Cook.

Cook Contracting Company is also a partnership composed of James Cook, Arthur Cook and Remsen Cook.

It was Cook Contracting Company which entered into the contract with the State of New York, out of which the fund in dispute grew.

The defendant was the surety on the bond given for the performance of the contract.

On April 8, 1931, Cook Contracting Company assigned to the plaintiff all moneys due under the contract, and the assignment was duly filed as required by statute.

A default under the contract was declared July 14, 1931, and the defendant, surety on the completion bond, completed the performance of the contract, suffering a loss of $55,783.59.

At the time of the default the contractor had performed work (for which it had not been paid) to the amount of $17,526.19, and the retained percentages on the contract at the time of the default amounted to $3,092.86.

These figures are taken from the stipulation at page 11 of the record.    There are discrepancies between these figures and those quoted in the briefs.

The assignment to the plaintiff by Cook Contracting Company of all moneys due under the contract was in consideration of loans made by the plaintiff to George T. Cook & Sons, evidenced by notes indorsed by Cook Contracting Company and Anna B. Cook.

The same persons composed the partnership George T. Cook & Sons and the partnership Cook Contracting Company.    There is evidence from which it will be found that the name " Cook Contracting Company " was used by the partnership George T. Cook & Sons for convenience in bidding on public work.    All of the equip-

ment used by the Cook Contracting Company belonged to George T. Cook & Sons, and all books of account of the business done in the name of Cook Contracting Company were the books of George T. Cook & Sons.

The plaintiff claims that the defendant is not entitled to the moneys earned on the contract with the State of New York at time of the default, and the retained percentages, because that fund was not earned by its act in completing the contract, and because the plaintiff's rights as assignee are superior to the rights of the surety.

The defendant claims that the plaintiff is not entitled to the fund, because the consideration for the assignment to it was loans to George T. Cook & Sons, while the contractor was Cook Contracting Company.

The defendant claims that as surety it is subrogated to the rights of the obligee in the completion bond, the State of New York, and so is entitled to the moneys earned at the time of the default as well as any moneys due under the contract for work performed by it, the surety.

Both sides rely upon the case of *Arrow Iron Works, Inc.*, v. *Greene* (260 N. Y. 330). But in that case the surety company made no claim to the earned moneys, and the Court of Appeals said that it did not decide whether the surety was entitled to the retained percentages, which constituted the only earned moneys unpaid at the time of the default in that case. The *Arrow Iron Works, Inc.*, case is not, therefore, very helpful in the solution of this case.

The Federal courts have directly held that a surety which completes a contract is entitled to be reimbursed for the expense of completion, not only from the unearned moneys, but from the retained percentages. (*Lacy* v. *Maryland Casualty Co.*, 32 F. [2d] 48; *Prairie State Bank* v. *U. S.*, 164 U. S. 227.) And our Court of Appeals (246 N. Y. 569) affirmed the result in *Laski* v. *State of New York* (217 App. Div. 420).

In the *Laski* case it was not claimed that any moneys advanced by the assignee went into the construction in question, and it was held by the Appellate Division that, as against the assignee, the surety was subrogated to the rights and remedies of the State, but that as to a lienor who furnished materials which went into the construction, and to that extent diminished the expense which otherwise the surety would have been obliged to pay, it was held that the claim of the lienor came ahead of that of the surety.

The Court of Appeals in the *Arrow Iron Works, Inc.*, case indicates that the doctrine of subrogation is not to be strictly applied

as against a lienor who supplied materials and labor which, in part, created the fund of earned moneys or retained percentages. The same reasoning would require that the doctrine of subrogation be not applied strictly in the case of an assignee who had provided funds for use in the prosecution of the work and who thereby, in part, created the fund of earned moneys and retained percentages.

It follows that the doctrine of subrogation is to be applied in this case in favor of the surety, unless the proceeds of the notes discounted by the plaintiff were used in the prosecution of the work, and in the creation of the fund in dispute.

The plaintiff has failed to prove that the proceeds of the notes discounted by it were used in the prosecution of the work. All that the testimony discloses is that Cook Contracting Company had an account in the Westchester County National Bank at Peekskill, and that the proceeds of the notes discounted by the plaintiff and placed to the credit of George T. Cook & Sons were transferred to the account of the Cook Contracting Company in the Westchester County National Bank at Peekskill, N. Y. It does not appear what became of the funds after their receipt by the Cook Contracting Company, and it is, therefore, concluded that the defendant is entitled to the fund.

The plaintiff stipulated that the defendant suffered a loss of $55,783.59 in completing the contract, yet urges that the counterclaim of the defendant must be dismissed because the defendant failed to prove the reasonable cost of completion.

The very purpose of the stipulation was to obviate the necessity for proof of the reasonable cost of completion.

The fact that the plaintiff secured additional collateral from Anna B. Cook for its various loans to the Cooks does not affect the disposition of this case. The plaintiff owed no duty to the defendant in connection with that collateral and the doctrine of marshaling assets does not apply in such a situation.

Judgment will be awarded the defendant adjudging it entitled to the fund in the hands of the State Comptroller to the credit of contract No. 726.